# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL BULLOCK,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **NO. 13-03692** |
| **CAROLYN W. COLVIN,** | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    June 3, 2015

    Plaintiff, Michael Bullock, brings this request for review pursuant to 42 U.S.C. § 1383(c) of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The matter is before me for a Report and Recommendation.[1] For the reasons set forth below, I respectfully **RECOMMEND** that Plaintiff's request for review be **GRANTED** and the matter **REMANDED** for further proceedings consistent with this Report and Recommendation.

## I.     FACTS AND PROCEDURAL HISTORY

    Plaintiff was born on April 7, 1961, and was forty-six years old on the alleged disability onset date of August 3, 2007. (R. 156). Plaintiff completed two years of college, and has past relevant work experience as psychiatric technician and cleaner. (R. 174, 198).

---

[1] The Honorable Gene E.K. Pratter referred this matter to me for a Report and Recommendation pursuant to Local Rule 72.1 and 28 U.S.C § 636 (b)(1)(B). (Order, ECF No. 16).

Plaintiff filed a protective application for SSI on July 28, 2010, alleging that he had been disabled due to multiple impairments, including arrhythmias bradycardia, sleep apnea, hypertension, depression, high cholesterol, and herniated discs since August 3, 2007. (R. 169, 173). Plaintiff's claim was initially denied on November 15, 2010. (R. 68). On March 8, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 73).

A hearing before the ALJ was held on April 9, 2012. R. 35-65. Plaintiff was represented by counsel; Plaintiff and an impartial vocational expert ("VE") testified at the hearing. (*Id.*). On April 9, 2012, the ALJ issued a decision unfavorable to Plaintiff. (R. 15-24). Plaintiff filed a request for review to the Appeals Council on May 9, 2012. (R. 6). The Council denied Plaintiff's request on May 31, 2013, and Plaintiff commenced this action, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C § 1383(c)(3). (R. 1-3); (Complaint, ECF Nos. 1, 3).

## II.    LEGAL STANDARDS

Under the Social Security Act, a claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve (12) months." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 416.905. A five-step sequential analysis is used to evaluate a disability claim.[2] The claimant bears the burden of establishing steps one through

---

[2] The steps are as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the

four, and then the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the national economy, in light of his age, education, work experience and residual functional capacity ("RFC"). *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. The District Court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r. of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

### III. THE ALJ'S DECISION

Using the five step sequential analysis, the ALJ determined that Plaintiff was not disabled.

---

impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920.

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since July 28, 2010, the application date. (R. 17).

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; osteoarthritis; obesity; hypertension; diabetes; and status post symptomatic bradycardia. (*Id.*). The ALJ noted Plaintiff's medically determinable mental impairments of depressive disorder and history of polysubstance abuse in sustained remission. (R. 17-18). The ALJ determined that Plaintiff's mental impairments were not severe, because they did not impose more than mild limitations on Plaintiff's daily activities, social functioning, or ability to maintain concentration, persistence, or pace, and did not result in episodes of decompensation. (*Id.*).

At step three, the ALJ found that there was no evidence that, during the relevant period, Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-20). In considering Plaintiff's level of severity regarding Listings 1.02 (major joint dysfunction), 1.04 (spinal disorders), and 4.00 (cardiovascular impairments), the ALJ determined that the medical records failed to document the degree of severity needed to meet the requirements of the Listings. (*Id.*). The ALJ noted that obesity is not associated with any specific Listing, but considered the additional and cumulative effects of Plaintiff's obesity when assessing whether Plaintiff's impairments met or equaled the Listed Impairments. (R. 19-20).

At step four, the ALJ evaluated Plaintiff's statements, x-rays and examinations from treating providers, and the reports of consultative examining physicians Dr. Craig Nielsen and Dr. Michael Overbeck, and consultative psychologist Dr. James Vizza. (R. 20-23). The ALJ discounted Plaintiff's statements regarding the severity of his impairments to the extent they

4

were inconsistent with the record. (R. 20-22). Likewise, the ALJ gave little weight to the report of Dr. Overbeck because he found that it was inconsistent with the record as a whole. (R. 22). The ALJ afforded the report of Dr. Vizza great weight because he found that it was consistent with the medical evidence of record. (*Id.*) The ALJ also afforded the report of Dr. Nielsen great weight to the extent it was consistent with the RFC. (*Id.*). The ALJ noted the diagnostic and clinical findings stated that Plaintiff had an L5-S1 disc narrowing, mild osteoarthritis, normal motor strength in Plaintiff's lower extremities, no evidence of atrophy in the lower extremities, normal gait and station, and stable hypertension and diabetes. (*Id.*). The ALJ also noted that Plaintiff manages his back, leg, and ankle pain with Ibuprofen; his pain does not interfere with his concentration; Plaintiff has never been to the emergency room; Plaintiff attended physical therapy and was discharged after "reaching the maximum benefit" he could obtain; and Plaintiff does not use an assistive device to ambulate. (R. 21). Based on the evidence, the ALJ determined that Plaintiff has the RFC to perform light work with the following limitations: occasional pushing and pulling with his right lower extremity; occasional climbing of stairs and ramps, but no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling; avoiding concentrated exposure to extreme heat or cold, humidity and wetness, and hazards such as unprotected heights and moving machinery. (R. 20).

In the final step, the ALJ considered the VE's testimony from the hearing and determined that Plaintiff can work as an electric parts assembler, small products assembler, and inspector hand packager. (R. 24).

## IV. DISCUSSION

In his request for review, Plaintiff argues that the ALJ's decision is not supported by

substantial evidence because: (A) the ALJ failed to properly assess the severity of Plaintiff's mental limitations; (B) the ALJ failed to adequately explain his finding that Plaintiff does not meet or equal Listing 1.04A; and (C) substantial evidence does not support the ALJ's determination of Plaintiff's RFC.[3]

In my review of Plaintiff's claims, I considered the various sources of medical evidence, the submissions of counsel, the testimony at the administrative hearing, and the ALJ's decision. For the following reasons, I find that substantial evidence supports the ALJ's determination that Plaintiff's mental impairments are not severe, and that Plaintiff does not meet or equal Listing 1.04A. However, I recommend the District Court remand this matter because the ALJ failed to adequately explain his rejection of all pertinent evidence in the RFC analysis.

A.  **Plaintiff's Mental Limitations**

Plaintiff argues that the ALJ could not properly evaluate the severity of his mental limitations because his mental status has not been assessed by an examining or treating mental health professional. Plaintiff therefore contends that the ALJ was obligated to order a consultative psychiatric or psychological examination to make a proper and informed decision regarding Plaintiff's mental limitations.

When a claimant alleges a mental impairment, the ALJ must evaluate the record to determine the degree of limitation resulting from the mental impairment in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c). If the ALJ rates the plaintiff's limitations in the first three functional areas as "none" or "mild," and "none" in the fourth area,

---

[3] While Plaintiff's brief consists of five sections discussing alleged errors made by the ALJ, the last three sections of Plaintiff's brief relate to the ALJ's RFC assessment. Accordingly, I will address these issues jointly.

the ALJ will conclude that the alleged mental impairment is not severe. 20 C.F.R. § 416.920a(d)(1). This evaluation requires that the ALJ "[make] every reasonable effort to ensure that a qualified psychiatrist [or psychologist] . . . complete[] the medical portion of the case review and any applicable residual functional capacity assessment." *Plummer*, 186 F.3d at 433 (quoting *Andrade v. Sec'y of Health & Human Servs.,* 985 F.2d 1045, 1048 (10th Cir. 1993)).

Here, the ALJ determined that Plaintiff's mental impairments were not severe based on the findings of Dr. Vizza, a qualified psychologist who completed a Psychiatric Review Technique at the behest of the Agency on November 4, 2010. (R. 17-18). Based on his review of record, Dr. Vizza concluded that Plaintiff had only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation which have been of extended duration. (R. 301-13). Relying on this determination, the ALJ found:

> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere.

(R. 18).

Plaintiff first argues that the ALJ erred by relying on Dr. Vizza's Psychiatric Review Technique because Dr. Vizza did not conduct an in-person examination of Plaintiff. However, there is no requirement that an ALJ base his severity determination on findings derived in an in-person psychiatric or psychological examination. *See Plummer*, 186 F.3d at 433; *Fouch v. Barnhart*, 80 F. App'x 181, 185 (3d Cir. 2003) (not precedential). Rather, "the decision to order a consultative examination is within the sound discretion of the ALJ." *Thompson v. Halter*, 45 F.

7

App'x 146, 149 (3d Cir. 2002) (not precedential). Plaintiff suggests that here, the ALJ should have ordered such a consultation because the record evidence available was incomplete or lacking. This argument fails to acknowledge, however, that the claimant bears the burden to develop the record regarding his disability because he is in a better position to provide information about his own medical condition.[4] *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *see also* 20 C.F.R. § 416.912(a). Based on the record, the ALJ fulfilled his duty to determine the degree of limitations resulting from Plaintiff's mental impairments by having a qualified psychologist complete the medical portion of the case review and applicable RFC assessment. *See* 20 C.F.R. § 416.920a(c); *Plummer*, 186 F.3d at 433. The ALJ did not abuse his discretion in failing to order a consultative examination concerning Plaintiff's mental impairments. *See Thompson*, 45 F. App'x at 149.

Next, Plaintiff contends that the ALJ's determination that his mental impairments were not severe is not supported by substantial evidence because Plaintiff has been prescribed Wellbutrin to treat his depression. (Pl.'s Br. at 2 (citing R. 268, 292)). This is the sole piece of evidence cited by Plaintiff in support of this argument that his mental impairments are severe. While the record indeed reflects that Plaintiff has taken Wellbutrin, it also provides substantial

---

[4] Where a claimant is *pro* se, the ALJ's duty to develop the record may be greater. *See Reefer v. Barnhart*, 326, F.3d 376, 380 (3d Cir. 2003). Here, however, Plaintiff was represented by counsel in his administrative proceedings. A "claimant represented by counsel is presumed to have made his best case before the ALJ." *Wert v. Comm'r of Soc. Sec.*, No. 13-5705, 2015 WL 1808594, at *12 (E.D. Pa. Apr. 21, 2015) (quoting *Vivaritas v. Comm'r of Soc. Sec.*, 274 F. App'x 155, 158 (3d Cir. 2008) (not precedential)). "The onus is therefore on counsel to ensure that the ALJ is aware of all of the evidence favorable to a claimant's case and to probe all of the relevant issues." *Id.* (quoting *Harrison v. Colvin*, No. 2:14-cv-00719-TFM, 2014 WL 5148156, at *4 (W.D. Pa. Oct. 14, 2014)). Plaintiff could have further developed the record regarding his mental impairment, but chose not to do so. *See Thompson*, 45 F. App'x at 149; *Wert*, 2015 WL 1808594, at *12.

support for the ALJ's determination that Plaintiff's depression is mild. As previously noted, Dr. Vizza's Psychiatric Review Technique indicated Plaintiff suffered from Depressive Disorder and a history of drug abuse in sustained remission, but concluded that these mental impairments were not severe. (R. 301-13). Consultative physician Dr. Overbeck examined Plaintiff on October 25, 2010, and noted that Plaintiff suffered from depression, but indicated that it was mild. (R. 292). Consultative physician Dr. Nielson examined Plaintiff on April 15, 2008, and noted that Plaintiff's depression had been treated with Wellbutrin and that he had a history of substance abuse, but has been clean for almost one year and has a good support system. (R. 212-16). At the hearing, Plaintiff testified that he had not received mental health treatment since 2009 and had not received substance abuse treatment since 2008. (R. 51). Plaintiff stated that he had not used cocaine since June 2007. (*Id.*). All of this evidence tends to support, and certainly does not contradict, the ALJ's conclusion that Plaintiff's mental limitations were not severe. Accordingly, the Court concludes that the ALJ's determination was supported by substantial evidence.

      **B.     Listing 1.04A**

Plaintiff next argues that the ALJ did not adequately explain why Plaintiff did not meet or equal Listing 1.04A, which pertains to disorders of the spine. Plaintiff does not point to specific evidence ignored by the ALJ that would indicate his impairments met or equaled Listing 1.04A, except that Plaintiff contends the ALJ failed to give meaningful consideration to Plaintiff's obesity. (Pl.'s Br. at 5-8).

Listing 1.04A requires evidence of a disorder of the spine resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if

9

there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A. "For a claimant to show that his impairment matches a listing, [he] must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir.1992) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). Likewise, "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*.

The ALJ properly considered and discussed Plaintiff's obesity in Step 3 of his analysis. In considering Listing 1.04, the ALJ noted that Plaintiff's lumbar spine x-ray showed L5-S1 disc narrowing, positive straight-leg raising test, and decreased sensation on his right-side. (R. 19). However, the ALJ noted that Plaintiff had normal motor strength, no evidence of atrophy in his lower extremities, and required no assistive device for ambulation. (*Id.*). The ALJ further indicated he had considered Plaintiff's obesity in determining whether Plaintiff met or equaled Listing 1.04. (R. 19-20). The ALJ noted that Plaintiff's obesity has additional and cumulative effects, acknowledging that obesity "is often associated with musculoskeletal impairments and the combined effects of both impairments can be greater than the effects of each of the impairments considered separately." (R. 19). However, the ALJ concluded that, when Plaintiff's obesity is combined with his other impairments, Plaintiff's impairments did not meet or equal all of the specified medical criteria for Listing 1.04. (*Id.*).

To the extent Plaintiff's argues that the ALJ's analysis was conclusory, I disagree. The ALJ's analysis permitted "meaningful review" for his finding at step three. *See Jones v.*

10

*Barnhart,* 364 F.3d 501, 505 (3d Cir.2004). The ALJ is not required "to use particular language or adhere to a particular format." *Id.* The ALJ discussed Listing 1.04A and described how Plaintiff's impairments did and did not meet the requirements of the Listing. (R. 18-20). The ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Plaintiff did not meet or equal all the requirements of Listing 1.04A. *Jones,* 364 F.3d at 505.

Substantial evidence supports the ALJ's conclusion that Plaintiff's impairments, including obesity, failed to meet or equal all of the criteria of Listing 1.04A. The record lacks evidence that Plaintiff suffers motor loss, atrophy with associated muscle weakness, or muscle weakness accompanied by sensory or reflex loss, as required by Listing 1.04A. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04. In their assessments of Plaintiff's limitations, the consultative physicians considered Plaintiff's obesity. Consultative physician Dr. Overbeck conducted a physical examination of Plaintiff and classified Plaintiff as morbidly obese, noting his height of 5 feet 11 inches and weight of 294 pounds, and indicated that Plaintiff reported pain in his right leg, and that his right leg occasionally feels weaker. (R. 291-92). However, Dr. Overbeck concluded that there was no evidence of motor atrophy in Plaintiff's lower extremities. (R. 292). Additionally, consultative physician Dr. Nielsen conducted a physical examination of Plaintiff. He recorded Plaintiff's height as 5 feet 10 ½ inches and weight as 299 pounds. He noted that Plaintiff complained of right hip numbness when he walked too far, and low back pain if he stands for too long. (R. 212, 215). Dr. Nielson concluded that Plaintiff was morbidly obese, but that the motor examination of Plaintiff's extremities was normal. (R. 215).

Thus, the ALJ's decision that Plaintiff failed to establish his impairments met or equaled *all* of the requirements of Listing 1.04A was based on substantial evidence. *See Poulos*, 474 F.3d at 93; *Williams*, 970 F.2d at 1186.

### C.  RFC Analysis

Plaintiff's remaining claim consists of various arguments relating to the ALJ's RFC assessment. Specifically, Plaintiff argues the ALJ improperly discredited Plaintiff's testimony; improperly gave little weight Dr. Overbeck's report; improperly gave great weight to Dr. Nielsen's report; failed to adequately explain the RFC assessment; and failed to consider Plaintiff's mental impairments in assessing Plaintiff's RFC. (Pl.'s Br. at 8-20).

#### 1.  Plaintiff's Credibility

Plaintiff argues that the ALJ failed to adequately explain why he found Plaintiff to be not entirely credible. (Pl.'s Br. at 15-20). Plaintiff contends that the ALJ failed to address evidence that supports his subjective complaints, such as his physical therapy notes, in his credibility assessment. (Pl.'s Br. at 15-19).

"An ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). "When assessing a claimant's credibility . . . , *the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence . . . and set forth a logical explanation of the individual's ability to work.*" *Id.* (quoting SSR 95-5P, 1995 WL 670415, at \*2) (emphasis in the original). The ALJ may reject testimony of subjective complaints where it is not consistent with the objective medical evidence. *See Burns*, 312 F.3d at130-31; *see also Schuster v. Astrue,* 879 F. Supp. 2d 461, 470 (E.D. Pa. 2012). However,

"[w]here the [medical] evidence supports a claimant's claims, the ALJ must explicitly weigh the evidence, and explain a rejection of the evidence." *Schaudeck*, 181, F.3d at 435 (citations omitted). This specificity is required to provide a basis on which to assess whether "significant probative evidence was not credited or [was] simply ignored." *Id.* at 433 (*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

At the hearing, Plaintiff testified that he experiences lower back pain that radiates to his right leg and ankle. (R. 46). Plaintiff stated that his pain is exacerbated by low chairs, standing on cement, and standing on hard surfaces for a long period of time. (R. 47). He testified that he can lift five pounds, sit for approximately 30 to 40 minutes depending on the chair, walk for only a couple blocks, and has difficulty climbing stairs. (R. 52-53). He stated he cannot bend or stoop and has difficulty squatting and kneeling. (*Id.*). Plaintiff described his pain as ranging from 5 to 8 out of 10, often an 8. (*Id.*). He testified that due to his past drug use, he takes Ibuprofen for pain management, which provides some relief. (R. 47). Plaintiff stated he had completed 20 physical therapy session, but that the physical therapy did "not really" provide relief and he was discharged because "there was no more . . . they could do." (R. 48).

In evaluating Plaintiff's credibility, the ALJ noted that Plaintiff stated that he experienced pain in his lower back that radiates to his leg and ankle; he can lift only less than five pounds, sit for extended periods of time depending on the chair, and walk only a couple blocks; and he cannot bend, stop, or kneel. (R. 20). The ALJ, however, found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects . . . are not credible to the extent they are inconsistent with the above [RFC] assessment." (R. 21). In discrediting Plaintiff's testimony, the ALJ stated:

> His lumbar spine x-ray from November 9, 2009, however, showed some disc narrowing, while bilateral ankle x-rays showed mild

13

osteoarthritis. He had lumbosacral spine tenderness, a positive straight-leg raise, and decreased sensation on the right during physical examinations, but he had normal motor strength and no evidence of atrophy in his lower extremities. He requires no assist[ive] device for ambulation, which he reported to his consultative examiner, and acknowledged at the hearing. His gait and station were also noted to be normal during his physical examinations.

The claimant received routine and conservative treatment for his allegedly disabling pain. He is limited to taking Ibuprofen due to his past addiction issues, but he testified that [th]is relieves his pain successfully. Additionally, he attended 20 physical therapy sessions between November of 2009 and April of 2010, and was discharged after reaching the maximum benefit with a home exercise routine. He did not receive injections for his pain and he is apparently not a candidate for surgical intervention. His physicians recommend weight loss and bariatric surgery.

\* \* \*

In addition, the claimant performs activities of daily living above what one would expect for someone who is totally disabled. The claimant participates in church activities and helps his cousin at home with mopping and vacuuming. It was also noted that he was capable of visiting his mother in Atlanta. He drive[s] a car, reads and walks, takes the bus to see his physician, and goes to church every week.

As discussed above, the record suggests that the claimant retains the ability to perform less than a full range of light work, which the undersigned has accommodated in the above-assessed [RFC].[5]

(R.21-22 (citations omitted)).

The ALJ's cursory discussion of Plaintiff's physical therapy notes and reports provide no indication that the ALJ considered this evidence supporting Plaintiff's complaints regarding his ability to sit, stand, and walk. In his analysis of Plaintiff's physical therapy records, the ALJ merely stated "[Plaintiff] attended 20 physical therapy sessions between November of 2009 and

---

[5] The ALJ did not recognize any limitation on Plaintiff's ability to sit, walk, or stand.

14

April of 2010, and was discharged after reaching the maximum benefit with a home exercise routine." (R. 21). Critically, the ALJ failed to acknowledge that despite meeting his physical therapy goals, the physical therapist assessed Plaintiff as able to walk or stand for no more than approximately 60 minutes. (R. 229). Plaintiff's physical therapy discharge note, completed by a physical therapist and reviewed by physician, Dr. Daniel Schwartz, indicated that Plaintiff met his activity goals and state that Plaintiff "[h]as reached maximum benefit from [physical therapy]," as the ALJ noted. (R. 21, 229). Nevertheless, the ALJ failed to note that the discharge note also indicated the maximum benefit Plaintiff achieved was walking/standing for approximately 60 minutes, significantly less than physical exertion requirements of "light work."[6] (*Id.*); 20 C.F.R. § 416.967(b). The discharge note indicates that after Plaintiff walks/stands for approximately 60 minutes, Plaintiff suffers from back pain and lower extremity numbness. (R. 229). Additionally, the functional status summary report completed on the date of discharge by a physical therapist, indicates that the intensity of pain Plaintiff experienced in the last 24 hours level was 6 out of 10 and ranged from 5 to 9 out of 10 in the past 30 days. (R. 243). Progress notes from December 2009, show that after ten physical therapy sessions, Plaintiff was able to stand/walk for 20 minutes before he experienced back pain and right lower extremity numbness. (R. 238). Plaintiff stated that he experienced back pain and right leg numbness after walking at the mall for 20 minutes. (R. 234). Notes from January 20, 2010 indicate that Plaintiff reported considerable back discomfort after sitting for more than 1.5 hours, and experienced right hip numbness after a physical therapy session. (R. 232).

---

[6] Light work, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . If someone can do light work, . . . he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

15

Consequently, I am unable to determine if this "probative evidence was not credited or [was] simply ignored." *Schaudeck*, 181, F.3d at 433. The ALJ erred by failing to explicitly weigh and explain a reason for rejecting probative medical evidence that supported Plaintiff's complaints. *Id.* at 433, 435.

Accordingly, I respectfully recommend that the matter be remanded, with a directive that the ALJ explicitly weigh all evidence of record supporting Plaintiff's complaints, particularly Plaintiff's physical therapy records discussing Plaintiff's physical limitations, and give a "clear and logical statement of facts supporting his conclusions" at step four. *Id.* at 435.

### 2. Plaintiff's Additional RFC Arguments

In light of my recommendation to remand the matter, I will briefly address Plaintiff's remaining arguments.

Plaintiff argues the ALJ improperly gave great weight to Dr. Nielsen's report and improperly gave little weight Dr. Overbeck's report discussing Plaintiff's limitations. Dr. Nielsen concluded in his April 15, 2008 report that Plaintiff's impairments did not result in any limitations on his ability to lift, carry, stand, walk, sit, push or pull. (R. 218). Dr. Nielsen noted that Plaintiff could bend, kneel, stoop, crouch, balance, and climb only occasionally, and indicated that Plaintiff's impairments restricted his ability to move machinery and handle heights. (R. 219). In contrast, Dr. Overbeck concluded in his October 25, 2010 report that Plaintiff was limited to occasional lifting and carrying ten pounds, standing and walking for 20 minutes, sitting less than one hour, limited pushing and pulling in the lower extremity, occasional bending; no kneeling, stooping, crouching, balancing, and climbing, and environmental restrictions. (R. 289-98). The ALJ determined that Dr. Overbeck's opinion was entitled to little weight because it was not supported by the medical record, and that Dr.

16

Nielsen's report was entitled to great weight to the extent it was consistent with the assessed RFC. (R. 22). Reconsideration of Plaintiff's physical therapy records may impact the ALJ's assessment of Drs. Nielson and Overbeck's reports, and therefore the ALJ should consider Plaintiff's arguments relating to the ALJ's assessment of Drs. Nielson and Overbeck's reports on remand.

Plaintiff also argues that the ALJ failed to adequately explain his RFC determination. Plaintiff contends that the ALJ narrative is boilerplate and fails to identify satisfactory evidence to support his findings. Pl.'s Br. at 8-11. Because reconsideration of Plaintiff's physical therapy records may impact the ALJ's narrative regarding Plaintiff's RFC, I need not discuss the argument further and suggest the ALJ consider the argument on remand.

Plaintiff last argues that the ALJ did not consider his mental impairments in assessing his RFC, and therefore failed to include his mental limitations in the hypothetical to the VE. (Pl.'s Br. at 11-12). However, the record indicates otherwise. Review of the ALJ's opinion shows that the ALJ did consider Plaintiff's mental limitations in the RFC assessment. At step 2, the ALJ indicated that "the following [RFC] assessment "reflects the degree of limitations the undersigned has found in the 'paragraph B' mental function analysis." (R. 18). In determining Plaintiff's RFC at step 4, the ALJ stated he gave great weight to the Psychiatric Review Technique conducted by Dr. Vizza, which concluded that Plaintiff had only mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation which have been of extended duration. (R. 22, 301-13). The ALJ also considered the reports of Drs. Nielson and Overbeck, the only other evidence in the medical record that discusses Plaintiff's mental impairments. (R. 22). Drs. Nielson and Overbeck's reports noted that Plaintiff's mental impairments were mild and did not indicate any work

17

limitations caused by Plaintiff's mental impairments. (R. 212-16, 292). The record, therefore, does not suggest that the ALJ ignored evidence of significant limitations concerning Plaintiff's mental abilities. (R. 51, 212-16, 292, 301-13); *see also supra* Part IV. A. Moreover, Plaintiff does not specify any mental limitations that would have precluded him from working. Accordingly, the ALJ did not err where his RFC assessment and hypothetical to the VE did not include work restrictions related to Plaintiff's mental impairments. *See Stewart v. Astrue*, No. 11-1338, 2012 WL 1969318. at *20 (E.D. Pa. May 31, 2012) (finding ALJ's failure to include a specific reference to claimant's mild mental limitations in his RFC assessment or hypothetical questions to the VE reflected the ALJ's determination that the impairments were "so minimal or negligible" that they would not significantly limit claimant's ability to perform work and did not warrant further questioning of the VE).

## V. CONCLUSION

After careful review of the record, I respectfully recommend that the District Court remand this matter for further proceedings consistent with this Report and Recommendation.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this __3rd__ day of June, 2015, it is RESPECTFULLY RECOMMENDED that Plaintiff's request for review be GRANTED to the extent that this matter be remanded for further proceedings consistent with this Report and Recommendation.

BY THE COURT:

___s/s_ Lynne A. Sitarski_____
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE